```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
                                    :
RENEE JACKSON                       :
                                    :
v.                                  :   CIV. NO. 3:07CV0471 (JCH)
                                    :
AFSCME LOCAL 196,                   :
CARLA BOLAND, LINN MILLER,          :
AFSCME COUNCIL 4                    :
```

Ruling on Plaintiff's Second Motion for Sanctions

and Adverse Inference [Doc. #281]

Pending is plaintiff's Second Motion for Sanctions and Adverse Inference **[Doc. #281]**. Plaintiff seeks sanctions and an adverse jury instruction claiming that defendants have failed to produce a "Renee Jackson File." After careful consideration, the Court rules as follows.

Facts

Plaintiff filed a Motion to Compel defendants to respond to discovery requests, which the Court granted in part on April 30, 2009. [Doc. #273]. As a result, counsel for the defendants produced various files maintained by Council 4 Service Representatives on Renee Jackson. After reviewing these boxes, plaintiff determined that there was no "Renee Jackson File" produced or handwritten notes of Carla Boland.

Plaintiff's document requests sought information related to defendant's treatment of plaintiff by union agents and officials, their investigation and/or handling of her grievances and a limited inquiry regarding differential treatment of plaintiff and

other union members.  Specifically, plaintiff sought documents, including notes, exchanged between defendant union officers and service representatives relating directly or indirectly to plaintiff during the time period June 2001 through the present.

In support of her motion, plaintiff argues that defendant, Carla Boland, AFSCME Local 196 President, testified at her deposition that there was a "Renee Jackson File" that was maintained by Council 4.[1]  Additionally, plaintiff argues that Defendant Sal Luciano stated that as of March 2004 it was the union's normal business practice to keep notes of grievance meetings and hearings.

Defendants point out that the only person who used the phrase "Renee Jackson File" was plaintiff's counsel.  In a sworn affidavit submitted by Ms. Boland, she defines her understanding of the term "Renee Jackson File" used during her deposition.

> During the deposition, Attorney Miller made several references to a "Renee Jackson File."  See transcript at p.25, 27,31.  At that time, I understood her to be using ther term "file" in a generic sense, such as one might refer

---

[1] Q.   If Alturo Rodriguez [sic] had received a copy of the document
        regarding Amy Kubacha, would that have been forwarded to the Council 4 file on Renee Jackson?
   A.   Alturo would have had in his possession –
   Q.   And -
   A.   -Renee would not.
   Q.   But my question is, would that have been made a part of the service rep's- Council 4 Renee Jackson file?
   A.   Yes.

Depo. of Carla Boland, 11/26/08, at 70.

> to "the Renee Jackson matter" or simply whatever information might pertain to Renee Jackson, regardless of its form. It was not my understanding that Attorney Miller was speaking of a physical file folder containing pieces of paper referring to Renee Jackson, nor did I understand her to mean a computer file containing documents or information with respect to Renee Jackson.

Aff. of Carla Boland at 4.

Defendants have produced handwritten notes for one of the nine grievance hearings held. Plaintiff believes these notes are numbered p.90-96 and argues that this implies there are at least 90 pages of handwritten notes missing. However, Mr. Jeffrey Scanlon states in his sworn affidavit,

> I took six pages of notes at a Step III hearing on April 15, 2003, with respect to several of Renee Jackson's grievances. In the upper right-hand corner of the first page, I wrote "pg1". The second page was "pg2", the third "pg3", the fourth "pg4", the fifth "pg 5" and the sixth "pg6". The pages are *not* numbered "p91", "p92", "p93", "p94", "p95" and "p96". The six pages of notes are my complete notes of that grievance hearing.

Aff. of Jeffrey Scanlon at 5.

Plaintiff also claims that an Arturo Rodriguez "Renee Jackson File" exists; however there is no basis to believe that any documents Mr. Rodriguez maintained are not included in the documents already produced.

In support of their objection to Ms. Jackson's motion, defendants supplied an affidavit of Barbara Williams, who was assigned the task of gathering any material that any Council 4 staff had with respect to Renee Jackson. Doc. # 291, Ex. N, Aff.

of Ms. Williams at 10.  Ms. Williams states that she spoke with a Tom Sellas, who moved into Rodriguez's office after Rodriguez's employment was terminated on or about November 22, 2003.  Id. at 11.  Ms. Williams asked Sellas whether he had found any materials in that office relating to the plaintiff.  Id.  Sellas advised her that he had not found any files, documents or other materials in that office which related to Ms. Jackson.  Id.  Williams did obtain documents regarding Ms. Jackson from Jeffrey Scanlon, Kelly Cashman and John Little, all of whom were service representatives employed by Council 4 during the relevant period.  Id. at 12.  Ms. Williams also examined the storage area or archives of Council 4 in its basement and found no documents relating to Ms. Jackson.  Id. at 13.  Ms. Williams is not aware of anyone who knows whether Rodriguez kept files of any of the grievances he handled.  Id. at 15.  All of this information was included in counsel's May 11, 2009 review.  Id. at 16.

The affidavits of Ms. Williams and Ms. Boland state that Council 4 does not have any set of procedures or policies with respect to the manner in which service representatives and staff representatives are to create and maintain files with respect to local unions and/or grievances.  Id. at 14, Aff. of Carla Boland at 5.  It is left to the discretion of the service representative to decide what documents or files need to be created and/or maintained.  Id.

Plaintiff argues that the trigger date in this case is at least as early as October 3, 2003 when counsel for the plaintiff's employer, Attorney Weller, "respectfully request[ed] that [Hooker] instruct all union representatives involved in any matter between Ms. Jackson and the Lottery to preserve their notes from any meetings, hearings, etc." Plaintiff claims that defendants were also on notice on June 11, 2003 that plaintiff claimed a failure to represent based upon her filing of a complaint before the Connecticut State Board of Labor Relations.

Discussion

Spoliation of evidence has been explained by the Second Circuit as:

> the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. The spoliation of evidence germane to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction. This sanction serves a threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation.

Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (internal citations and quotation marks omitted).

"[A] party seeking an adverse inference instruction based on

the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.  <u>Residential Funding Corp. v. DeGeorge Financial Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002) (citing <u>Byrnie v. Town of Cromwell</u>, 243 F.3d 93, 107-12 (2d Cir. 2001). 'In this circuit, a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence. When evidence is destroyed in bad faith ( i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions."  <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

"The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis."  <u>Fujitsu Limited</u>, 247 F.3d at 436 (citations omitted).

1.  <u>Duty to Preserve</u>

The Court finds established that if the defendant had the documents sought, it had an obligation to preserve the evidence. "The obligation to preserve evidence arises when the party has

notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Limited v. Federal Express Corp., 247 F.3d 423 (2d Cir. 2001) (citing Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)).

   Defendants dispute that they had a duty to preserve.  First, defendants argue that since the request came from counsel for the Connecticut Lottery Corporation ("CLC") and pertained only to matters between the plaintiff and the CLC, the duty ended when that matter was settled on April 9, 2004.  Second, defendants argue that although there is a long history of grievances, the defendants were representing the plaintiff and had no reason to believe that Ms. Jackson would ever be bringing claims of any nature against Local 196 or Council 4.  Third, Council 4 was not a named defendant in this case until October 12, 2006 when plaintiff amended her complaint for a third time.  However, Ms. Jackson had filed complaints against Boland on June 11, 2003 and February 24, 2004.  The first complaint was withdrawn and the second was disposed of on May 18, 2004.  Ms. Jackson filed a third labor board complaint against Ms. Boland in December 2004.[2] Additionally, the written settlement agreement reached between Ms. Jackson and the CLC specifically notes that Plaintiff was not

---

   [2]The Labor Board interpreted this complaint as against both Ms. Boland and Local 196.

relinquishing her right to bring a prohibited practice claim.

The Court has considered defendants' argument that they could have reasonably assumed that plaintiff's settlement of her claims against the CLC meant that all matters relating thereto were over and that there was no longer any reason to retain documents.  The Court does not find the argument persuasive.

2.  State of Mind

The Court does not find that plaintiff knowingly destroyed a "Renee Jackson File"; however, a "culpable state of mind is established by ordinary negligence." Doe v. Norwalk Community College, 248 F.R.D. 372 (D. Conn. 2007).  "Once the duty to preserves attaches, any destruction of [evidence] is at a minimum, negligent." Zubulake, 220 F.R.D. at 220.

There is no evidence that a "Renee Jackson File" existed or that defendants were negligent.  The testimony submitted in the form of affidavits clarifies what the Court believes plaintiff's counsel has misconstrued.

3.  Relevance

The next step is to determine whether plaintiff has been prejudiced by defendants's failure to properly preserve the evidence and, if so, to what extent.  Plaintiff has not demonstrated, on this record, that their ability to litigate this case has been substantially impaired. Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) ("relevance must be

8

proven by the party seeking the sanctions."). "[T]he party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" Residential Funding Corp., 306 F.3d at 109 (quoting Kronisch v United States, 150 F.3d 112, 127 (2d Cir. 1998)),

Here, plaintiff's complaint alleges that various persons failed to conduct a proper investigation of her grievance claims. It would be detrimental to defendants' case if they were to destroy meeting notes, notes of investigations or witness statements. If anything, the failure of defendants to produce the documents sought helps plaintiff's claims.

Accordingly, plaintiff has not sustained her burden that the non-existence of a "Renee Jackson File" has substantially impaired her ability to litigate this case.

Conclusion

Accordingly plaintiff's Second Motion for Sanctions and Adverse Inference **[Doc. #281]** is **DENIED**.

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it

is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport this 9th day of March 2010.

```
        ____/s/_____
        HOLLY B. FITZSIMMONS
        UNITED STATES MAGISTRATE JUDGE
```